UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SHARON GREEN,

                Plaintiff,

     - against -                                 04 Civ. 5144 (PAC)
                                                  OPINION AND ORDER

NEW YORK CITY  HEALTH AND HOSPITAL
CORPORATION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Sharon Green alleges that her former employer, New York City Health

and Hospital Corp. ("HHC"), discriminated against her because of her disability, in

violation of the Americans with Disabilities Act, 42 U.S.C. § 12010 et seq. ("ADA"), and

gender and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Pregnancy Discrimination

Act, 42 U.S.C. § 2000e(k) ("PDA")[1].  Green claims that while she was on maternity leave

just prior to the birth of her child, HHC wrongfully terminated her.  HHC counters that its

reasons for terminating Green were non-discriminatory and moves for summary

judgment against Green on all her claims.  The Court finds that Green was not disabled

nor was she discriminated against in violation of Title VII.  Plaintiff has failed to raise

genuine issues of material fact; accordingly, HHC's motion for summary judgment is

GRANTED.

---

[1] Plaintiff did not reference the PDA in her complaint.  For discussion, see supra note 6.

HHC, the municipal hospital and health care system for New York City, hired Green as a provisional computer operator at Harlem Hospital Center on May 22, 1989. Initially, Green's civil service title was provisional Assistant Systems Analyst. She was promoted to provisional Computer Aide on December 23, 1991; and then to provisional Computer Associate (Software), Level I, on December 17, 1992.

The Computer Associate (Software) title is described as a competitive broadbanded title with three assignment levels (I, II, and III). Green was the only provisional employee serving as a Computer Associate (Software), Level I, at Harlem Hospital Center in 1997.

She remained as a provisional employee throughout her employment at HHC, and never held a permanent civil service title. Green completed Civil Service Examination No. 3274 for the Computer Associate (Software) (Systems Analysis and Design) position on May 20, 1997. Green received a qualifying rating and was added to the eligible list for the position as candidate number 44.5 of 66. Thus, Green was eligible for permanent appointment to the position she held provisionally.

On or about June 27, 1997, Green injured her hand as the result of a non-work related car accident. Green chose to use her sick and annual leave after the accident and did not return to work. When this leave was exhausted, Green requested a paid Medical Leave of Absence for an indefinite period of time, citing continued complications from

---

[2] The factual summary presented herein derives primarily from the following documents: Complaint, Green v. N.Y.C. Health & Hospitals, Corp., No. 04 Civ. 5144, dated June 29, 2004; Defendant's Memorandum of Law in Support of Motion for Summary Judgment, dated May 2, 2007 with accompanying Exhibits and Affidavits; Defendant's Rule 56.1 Statement, dated May 2, 2007; Response to Defendant's Motion for Summary Judgment and Statement of Material Facts, dated Aug. 15, 2007 with accompanying Exhibits; Defendant's Reply Memorandum of Law in Further Support of Motion for Summary Judgment, dated Sept. 4, 2007 ("Reply"). Except where specifically referenced, no further citation to these sources will be made.

her hand injury.  This request was denied on August 1, 1997.  Green still did not return to work.  On November 12, 1997, Green was retroactively approved for unpaid "family" leave, dating from July 23, 1997 to October 22, 1997.  On October 20, 1997, Green applied for maternity leave.  Her request for maternity leave was approved from October 23, 1997 to May 22, 1998.  In sum, between June 27, 1997 and December 18, 1997, the date of her termination as a provisional Computer Associate (Software), Level I, Green was absent from work at Harlem Hospital Center.

On November 20, 1997, HHC notified Green that a civil service certification pool for the Computer Associate (Software) (System Analyst and Design) position was to take place on November 25, 1997.  HHC alerted her to the probability that she would be "bumped" from her provisional post.  The memorandum instructed Green to forward her list number for the relevant examination to the human relations department so that she could be considered for permanent appointment to her position.

Green claims that a representative in the human relations department and told her that she would not be considered at the certification pool, unless she could take the position on an immediate full-time basis.  Green declined to attend due to her pregnancy.  As a result, Green's name was removed from the eligible list for consideration of permanent placement.

On November 25, 1997, HHC selected the candidate placed number one on the eligible list for the Computer Associate Software title.  The candidate, a female, completed promotional civil service examination number 3618.[3]  HHC notified Green of

---

[3] Promotional examination number 3618 was for Computer Associate Software—SAS.  The parties do not explain the distinction between the SAS suffix and the "Systems Analysis and Design" suffix that corresponded with examination, 3274, for which Green sat.  In her declaration, Beth Slovitz-Owens, Senior Director of Human Resources Management for HHC, states that because both examination 3618 and 3274

her displacement and termination in a letter dated November 26, 1997, stating that her services in her provisional position were no longer required after December 18, 1997.

On December 16, 1997, the new appointee informed HHC that she was declining the position of Computer Associate (Software), Level I, at Harlem Hospital Center. HHC decided not to select a replacement candidate from the eligible list, which included Green. Instead, in Spring 1998, the position was reclassified to a lower assignment level—Computer Associate (Operations), Level II. HHC claimed that the needs of the department had changed, though it never explained the nature of those changes nor why the reclassification better suited the new requirements. In its Determination and Order After Investigation, dated February 6, 2004, the New York City Commission on Human Rights ("NYCCHR") stated that an Operations, Level II, position paid less than Software, Level I. The NYCCHR postulated that, while the new provisional hiree was performing the same type of work that Green had performed, HHC saved on labor costs.

Green alleges that HHC reclassified her former position in order to prevent her from returning to the position in either a provisional or permanent capacity. She claims that the employee who took the Operations, Level II, position on a provisional basis, Mr. Harold Glacken, left the job because he felt that he was not being paid commensurately with the work he was doing.

In a letter dated December 30, 1997, Plaintiff requested restoration of her name to the Computer Associate (Software) (Systems Analysis and Design) eligible list. HHC restored her to the list on March 13, 1998. This process was repeated twice more. On October 1, 1998 and again on September 21, 1999, Plaintiff declined to attend hiring

---

were "a specialty for the Computer Associate Software title, they were all appropriate to fill the HHC title of Computer Associate Software depending on the needs of the department." (Decl. of Beth Slovitz-Owens ¶ 7.) Green does not rebut this claim.

pools for the Computer Associate Software title, resulting in her name being removed from the eligible list. After each occasion, Plaintiff requested and HHC granted reinstatement to the list.[4]

After the car accident, Green claims that she was unable to work full-time due to her injury, though, as of approximately June 1998, she was cleared to work on a part-time basis performing light duty. On February 1, 2000, Green's physician encouraged her to return to work full time and resume regular activities. On May 18, 2000, the list for examination number 3274 expired after three years.

Green's discrimination claims center on her termination during her maternity leave. According to Green, HHC discriminated against her based on her pregnancy and the injury she sustained in the car accident in violation of the ADA; and discriminated based on her gender based on Title VII and the PDA amendment to Title VII. To support her claim of wrongful termination, Green points to the allegedly unnecessary and meritless reclassification of her Computer Associate (Software) position upon the reopening of the post in late 1997 and early 1998. Green claims that HHC failed to reasonably accommodate her because it did not consider her candidacy for her former position outside the scheduled hiring hall. Green claims that she was the only qualified, provisional employee and should have been given an opportunity to interview after her pregnancy.

In support of its motion for summary judgment, HHC counters that discrimination was not a factor in its decision to terminate Green. Instead, publication of a listing of qualified, eligible candidates for permanent appointment required the termination of

---

[4] Green was restored to the list for the third and final time on December 1, 1999. Persons removed from the eligible list may request that their names be restored to the eligible list no more than three times. HHC Personnel Rules and Regulations ("PRR") § 4:8:2.

provisional appointments. As a candidate on the eligible list, Green was offered the opportunity to participate in a hiring hall for her position, even though she was pregnant, which she declined. HHC further argues that Green was unable to perform her work until at least 2000, approximately two and a half years after taking leave from her provisional post. HHC points out that, despite not working, Green remained on the eligible list as a candidate for a permanent position and was invited to participate in subsequent hiring pools.

HHC also contends that Green was not terminated on the basis of a disability— either her pregnancy or hand injury—because Green's conditions were temporary or otherwise not cognizable as "disabilities" under the ADA.

On May 4, 1998, Green filed a complaint with the  ("NYCCHR"), charging that HHC discriminated against her on the basis of her gender and disability. On February 6, 2004, NYCCHR dismissed Green's complaint having found no probable cause for discriminatory termination. She filed a timely charge, alleging discrimination on the basis of her disability and gender with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC adopted the findings of the NYCCHR and issued a dismissal and right-to-sue letter on April 28, 2004. Green commenced the present action on June 29, 2004.

## DISCUSSION

### I.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997) (alterations in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). The nonmoving party, however, may not rely solely on "conclusory allegations, conjecture, and speculation." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotation marks omitted). She must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); accord Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Instead, she must present specific evidence in support of her contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).

In employment discrimination cases, where the employer's intent and state of mind are in dispute, the Court must proceed with caution. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). Summary judgment should be limited to situations where there is a complete lack of evidence in support of the plaintiff's position, or the evidence is so overwhelmingly slanted in favor of the defendant "that any contrary finding would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998). Still, a plaintiff "is not entitled to a trial simply because the determinative

issue focuses on the defendant's state of mind." Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988). As this Circuit has cautioned:

> The summary judgment rule would be rendered sterile . . . if the mere
> incantation of intent or state of mind would operate as a talisman to defeat
> an otherwise valid motion. Indeed, the salutary purposes of summary
> judgment—avoiding protracted, expensive and harassing trials—apply no
> less to discrimination cases than to commercial or other areas of litigation.

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

## II. The Employment Discrimination Claims

On a motion for summary judgment, employment discrimination claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must make out a prima facie case of discrimination. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). The burden of proof at the prima facie stage is de minimis. Id. If the plaintiff meets this burden, the defendant must offer a legitimate non-discriminatory reason for its actions. Id. If the defendant puts forth such a reason, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for discrimination. Id.

## A. The ADA Discrimination Claim

### 1. Applicable Law

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."
42 U.S.C. § 12112(a). To recover, Green has to demonstrate, inter alia, that she was
disabled within the meaning of the ADA. See Giordano v. City of New York, 274 F.3d
740, 747 (2d Cir. 2001).

To establish a disability under the ADA, there must be some proof of
permanency. See Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir.
1999). In other words, the limitation of the claimed major life activity cannot be
temporary. Id. (temporary neck, back, and knee injury lasting three and a half months not
a disability); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998)
(temporary impairment of seven months not substantially limiting); McNamara v.
Tourneau, Inc., 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) (injury lasting only eight
weeks not a qualifying disability); Williams v. Salvation Army, 108 F. Supp. 2d 303,
312-13 (S.D.N.Y.2000) ("temporary, non-chronic impairments of short duration, with
little or no long-term or permanent impact, are usually not disabilities").

## 2. Application

Plaintiff fails to submit any evidence that either her hand injury or her pregnancy
were qualifying disabilities. With regard to her hand injury, Green recognizes this
infirmity, conceding in her opposition papers that "she is not covered for her hand since
that injury was not a major life infliction." (Pl.'s Br. at 8.) Nor may pregnancy constitute
a qualifying disability. "Every court to consider the question of whether pregnancy in
and of itself is a 'disability' within the meaning of the ADA has concluded that it is not."
Minott v. Port Auth. of N.Y. & N.J., 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000)

(collecting cases). In these circumstances, as a matter of law, Green is not an "individual

with a disability," within the meaning of the ADA. Plaintiff's ADA claim is dismissed.

## B. The Title VII/Pregnancy Discrimination Act Claim

### 1. Applicable Law

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to

discriminate against its employees because of an employee's sex. 42 U.S.C. § 2000e-

2(a)(1). Gender discrimination includes discrimination because of pregnancy, childbirth,

or related medical conditions. See 42 U.S.C. § 2000e(k).[5] Title VII provides that

pregnant women "shall be treated the same for all employment related purposes." Id.[6]

The same McDonnell Douglas burden shifting framework applies to Green's Title VII

claim.

### 2. Application

### a. Prima Facie Evidence

Green's theory of discrimination begins with the termination of her provisional

employment on December 18, 1997. Green alleges that HHC acted again on its

purportedly improper motives when it reclassified the Computer Associate (Software),

Level I, post that Green had held provisionally as Computer Associate (Operations),

Level II, in Spring 1998. On this theory, the combined effect of these two decisions was

---

[5] When enacted in 1978, the PDA added a new definition for the terms "because of sex" and "on the basis of sex" to the definitional section of Title VII, 42 U.S.C. § 2000e. This definition, codified at 42 U.S.C. § 2000e(k), provides that these terms include: because of pregnancy, childbirth, or related conditions.

[6] Green specifically categorized her claim as falling under the PDA for the first time in her opposition brief. HHC argues that, because Green did not raise specifically a claim under the PDA in her complaint, the Court cannot now consider this claim. The Court disagrees. Green does not raise a second Title VII claim in addition to a heartland claim of gender discrimination. From the outset, her claim was predicated on her contention that she was terminated as a result of her pregnancy. Her later reference to the PDA is merely a definitional clarification that pregnancy discrimination is, by congressional act, subsumed into Title VII gender discrimination. See Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 277, 107 S. Ct. 683, 93 L.Ed.2d 613 (1987). Green's allegation under the PDA is, in fact, the same Title VII allegation she had made all along.

to make it impossible for Green to return to her position at Harlem Hospital Center, either in a provisional or permanent capacity.

Rather than apply the <u>McDonnell Douglas</u> test formalistically, the Court will assume that Green has made out a prima facie case of discrimination on this claim. <u>See, e.g.</u>, <u>Peterson v. City Coll.</u>, 32 F. Supp. 2d 675, 685 (S.D.N.Y. 1999); <u>Evans v. Golub Corp.</u>, 29 F. Supp. 2d 194, 201 (S.D.N.Y. 1998); <u>see also</u> <u>Lapsley v. Columbia Univ.</u>, 999 F. Supp. 506, 515 (S.D.N.Y. 1998) (listing cases in which the court assumed, without detailed analysis, that the plaintiff established a prima facie case of discrimination). The Court will proceed directly to the last two steps in the <u>McDonnell Douglas</u> inquiry: whether Defendants have provided a legitimate, nondiscriminatory explanation for terminating Green's employment and reclassifying her position, and, if so, whether Green has rebutted this explanation with evidence of pretext.

**b.  HHC's Nondiscriminatory Reasons**

HHC must provide a non-discriminatory reason for the adverse employment action. Here, HHC relies on civil service requirements. HHC is bound by civil service to hire applicants whose merit and fitness is determined by examination. Its rules specify that candidates who pass the civil service examination are placed on an eligible list. <u>See</u> HHC Personnel Rules and Regulations[7] ("PRR") §§ 4.1, 4.6. Provisional appointments to competitive civil service positions such as Computer Associate (Software) are permitted only when there is no valid eligible list available for the title in question. PRR § 5.5.1. Provisional appointments must be terminated as soon as possible upon the

---

[7] Attached as Exhibit U to the Declaration of Daniel Chiu in Support of Defendant's Motion for Summary Judgment.

certification of an eligible list and a candidate from that eligible list appointed to the position in place of the provisional employee. PRR § 5.5.4.

As a provisional appointee, Green was not permitted by law to hold her position in the civil service to the exclusion of a candidate on the appropriate eligible list for that position. Cabrera v. NYC, 436 F. Supp. 2d 635, 644-45 (S.D.N.Y. 2006) (citing McCann v. Kern, 262 A.D. 109, 28 N.Y.S.2d 321 (1st Dep't N.Y. Sup. Ct. 1941)). A provisional employee has no right to the position if a valid eligible list exists. Haynes v. County of Chautauqua, 55 N.Y.2d 814, 815-16, 447 N.Y.S.2d 430, 432 N.E.2d 132 (1981); see also Civil Serv. Employees Ass'n, Local 1000 v. State Dep't of Civil Serv., 250 A.D.2d 968, 969, 672 N.Y.S.2d 933 (3d Dep't N.Y. Sup. Ct. 1998) ("[A] probationary appointment . . . is entitled to none of the protections of the Civil Service Law or rules promulgated thereunder."). It is undisputed that Green was terminated after the establishment of the civil service list that corresponded to her position. There is no doubt that Green knew of her provisional status; otherwise, she would not have sat for the competitive examination for her position. The individual who was selected to take her position on a permanent basis was appointed from the established civil service list and was the highest ranked candidate on that list. Thus, HHC submits that Green was not displaced and terminated from her provisional employment because of her gender, pregnancy, or purported disability. Rather, it was because HHC was complying with civil service regulations.

HHC insists that, some time after the selected candidate turned down permanent appointment to the position, it was reclassified because the computer needs of the Harlem Hospital Center had changed. After an investigation, the NYCCHR managing attorney determined that HHC decision may have been motivated by payroll concerns. The new

position called for the appointment of a provisional or permanent employee with a lower salary.

HHC also calls attention to additional factors evidencing a lack of discriminatory intent. It points out that Green was notified that she was eligible to attend three separate hiring halls on November 25, 1997 (for her own position), October 1, 1998, and September 21, 1999. The civil service regulations require that an eligible candidate who does not attend a hiring hall is removed from the active list. PRR § 4:8:1. The employee can request reappointment to her original position on the list up to three times. PRR § 4:8:2. When Green refused to attend the hiring hall for the permanent Computer Associate position in November 1997, HHC accommodated her by granting her request to be returned to the eligible list, and it did so again on two subsequent occasions. Green, in fact, had three opportunities to obtain a permanent appointment to a Computer Associate title.

## C. Pretext

Since HHC has articulated a legitimate, non-discriminatory reasons for its actions, "[t]he plaintiff then has the full and fair opportunity to demonstrate . . . that the proffered reason was not the true reason for the employment decision," but was in fact a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (citation omitted). "[T]he plaintiff, in order to defeat summary judgment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by . . . discrimination." Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997). The Court reviews the record mindful that for the purposes of the instant motion, it is only to determine whether a genuine issue of material fact exists

after viewing the evidence in a light most favorable to Green and after giving her the benefit of all reasonable inferences.

Green completely fails to introduce evidence to demonstrate that HHC's nondiscriminatory justifications for its actions are mere pretext. First, Green fails to even address HHC's explanation regarding its termination of her provisional position. There is no evidence or argument that HHC waited until Green was out on maternity leave to call the Computer Associate hiring pool for her position. For instance, Green does not argue that an eligible list had been established prior to her maternity leave of absence and HHC simply waited for her to leave in order to activate the list. Indeed, there is no indication that HHC did anything other than follow its obligation to call for a hiring hall for the position when an eligible list was established and install a permanent candidate.

Green instead focuses on the reclassification of the position from Computer Associate (Software), Level I, to Computer Associate (Operations), Level II. She argues in her statement of facts that the needs of the department did not change for the reason that "[n]o one can be shown doing the work that plaintiff did." (Pl.'s R. 56.1 Statement of Material Facts ("SOF") ¶ 18.) She claims that "defendant cannot prove" that the reclassification "was not done on purpose" in order to discriminate against her. (SOF ¶ 19.) She also states that the provisional employee who eventually took the Computer Associate (Operations), Level II, position eventually resigned because "he felt that the job was not paying enough for the work that he was doing." (SOF ¶ 20.) Even if Green were correct in her factual arguments, they do not prove HHC's discriminatory intent.

In order to survive a motion for summary judgment, a plaintiff must offer concrete, admissible evidence from which a reasonable jury could find purposeful

discrimination by the defendant.  At the pretext stage, "the factual inquiry proceeds to a new level of specificity." Hicks, 509 U.S. at 518 (quoting Burdine, 450 U.S. at 255). The plaintiff must move beyond the de minimis showing that establishes a prima facie case "to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." Id.  Plaintiff must provide enough evidence of pretext that a rational fact finder could conclude that the employer's "presumptively valid reasons" for its conduct "were in fact a coverup for a racially discriminatory decision." McDonnell Douglas, 411 U.S. at 805.  A plaintiff attempting to establish pretext "may not prevail by establishing only [falsity], but must prove, in addition, that a motivating reason was discrimination." Bickerstaff, 196 F.3d at 447 (internal quotation marks and citations omitted). "The plaintiff retains the burden of persuasion." Hicks, 509 U.S. at 518 (quoting Burdine, 450 U.S. at 256).  "[T]he evidence as a whole must be sufficient to sustain an 'ultimate finding' of intentional discrimination." Peterson, 32 F. Supp. 2d at 684 (citation omitted).

Green fails to demonstrate that HHC's justifications are pretextual.  Her allegations are conclusory, entirely self-serving, and unsupported by a single piece of evidence other than her own opinions and conjectures.  Even when drawing all reasonable inferences in the light most favorable to Green, the record as a whole does not establish a genuine issue of fact as to pretext.  No reasonable jury could infer from Green's evidence (or lack thereof) that HHC terminated her employment and then conspired to keep her from the position based on a discriminatory motive.

Accordingly, HHC's motion for summary judgment with respect to Title VII is granted.

## **CONCLUSION**

HHC is entitled to summary judgment on Green's discrimination claims as a matter of law. Accordingly, the Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is ORDERED to close out this case.

Dated: New York, New York
         January 15, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge